# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHAEL ARIWODO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-04-4572** |
| | § | |
| **UNITED STATES IMMIGRATION AND** | § | |
| **CUSTOMS ENFORCEMENT, et. al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant United States' Notice of Substitution (Dkt. #30), Defendant United States Immigration and Customs Enforcement's ("ICE") Motion to Dismiss (Dkt. #31), Defendant United States' Motion to Dismiss Plaintiff's FTCA Claim, and, Alternatively, Motion for Summary Judgment (Dkt. #32), Defendant Officers Yebra and Pinero's Motion to Dismiss, and/or Alternatively, Motion for Summary Judgment (Dkt. #33), Defendant Officer Shifflett's Motion to Dismiss, or Alternatively, Motion for Summary Judgment (Dkt. #34), Defendant Officer Arendale's Motion to Dismiss, or Alternatively, Motion for Summary Judgment (Dkt. #35).  The Court will address each below.

## Factual and Procedural Background

In Plaintiff's First Amended Original Complaint, he alleged various state law tort claims and claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971) ("*Bivens* claims") against several officers of the ICE agency, as well as ICE itself. Plaintiff asserts that the individual defendants were Immigration Deportation Officers who were acting in the scope of their employment with ICE.  Specifically, Plaintiff alleges that on May 12, 2004, Officer Pinero summoned him to the ICE office in Houston.  Once there, Plaintiff alleges that

Officer Pinero escorted him to an office where Plaintiff was fingerprinted, and that he was then taken to a holding tank.  Later in the day, Plaintiff contends that Pinero summoned Plaintiff back to the office for additional fingerprints.  Plaintiff allegedly questioned the reason for the additional fingerprints, and was told they were for deportation and travel documents.  Plaintiffs asserts that he informed Pinero at this time that he needed to consult with his attorney.  Upon hearing his request for an attorney, Plaintiff maintains that Pinero became furious and told Plaintiff to chose between voluntary or forced compliance.  Plaintiff refused to comply without his attorney's consent.

After Plaintiff's refusal to comply, Plaintiff alleges that Pinero screamed obscenities at him.  Plaintiff contends that he was immediately surrounded by four other ICE officers, including Officers Yebra, Shifflett, and Arendale, along with another officer who has yet to be identified.  Plaintiff was asked to place his hands behind his back.  Plaintiff asserts that he was handcuffed, grabbed by the neck, and slammed into a concrete wall, which resulted in a cut above his right eye.  Officer Yebra then allegedly drove his knee into Plaintiff's side, and then slammed Plaintiff's face down on the concrete floor, where he allegedly choked and began suffocating Plaintiff.  While still on the floor, Plaintiff contends that Officers Pinero and Shifflett drove their knees into Plaintiff's back and sides.  Next, according to Plaintiff, Officer Yebra pinned him down while Pinero forcefully took his fingerprints.  After the ordeal, Plaintiff complains that he was sent at the instruction of Officer Arendale to an onsite clinic for treatment instead of a hospital emergency room.

Plaintiff commenced this lawsuit on December 7, 2004, and then filed his First Amended Original Complaint on June 1, 2005.  Plaintiff asserts *Bivens* claims against each of the individual officers, as well as ICE, based on violations of the Fourth, Fifth, Eighth, and Fourteenth

2

Amendments of the United State Constitution.[1]  Additionally, Plaintiff asserts state law claims for assault and battery, negligence and/or reckless use of force, and intentional infliction of emotional distress against each of the individual officers and ICE.[2]  On June 10, 2005, Defendant United States ("the Government") filed its Notice of Substitution (Dkt. #30), in which it sought to substitute itself for the individual defendants with respect to the state law claims.  To date, Plaintiff has not objected to the Government's Notice of Substitution.  On June 13, 2005, Defendants, either collectively or individually, filed motions to dismiss, with some also filing alternative motions for summary judgment.  Plaintiff has filed responses to these motions.

**Discussion**

Defendants moves for dismissal of all claims against them on several grounds.  In particular, Defendants maintain that the Court lacks jurisdiction over certain claims and that dismissal is thus proper under Federal Rule of Civil Procedure 12(b)(1).  Additionally, Defendants assert that Plaintiff has failed to state claims upon which relief may be granted with respect to certain claims, which should therefore be dismissed under Rule 12(b)(6).  Finally, the individual defendant ICE officers have also moved, in the alternative, for summary judgment under Rule 56 as to the *Bivens* claims asserted against them.

**I.**       **Standards of Review**

**A.**       **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a case against it for lack of jurisdiction over the subject matter.  When federal courts consider questions

---

[1] *See* Dkt. #29, ¶¶ 24-27.

[2] *Id*. at ¶¶ 28-36.

of subject matter jurisdiction, the precedent regarding its fundamental importance is clear.  "It is a fundamental principle that federal courts are courts of limited jurisdiction."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  "[A]bsent jurisdiction conferred by statute, [federal courts] lack the power to adjudicate claims."  *See Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir.1994).  "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking.  'This is the first principle of federal jurisdiction.'"  *Stockman v. Federal Election Commission*, 138 F.3d 144, 151 (5th  Cir. 1998) (quoting Hart & Wechsler, *The Federal Courts and the Federal System* 835 (2d ed.1973)).  Under Fifth Circuit precedent, a case may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Communications Inc*., 117 F.3d 900, 904 (5th Cir. 1997).

**B.      Rule 12(b)(6)**

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in its favor.  *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991).  The court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see*

4

*also Bonner v. Henderson*, 147 F.3d 457, 459 (5th Cir. 1998).  Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998).

### C.    Rule 56(c)

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required.  *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact

warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## II.    Notice of Substitution

The Government seeks to substitute itself, the United States, in place of Officers Pinero, Shifflett, Yebra, and Arendale with respect to the state law claims of assault and battery, negligence and/or reckless use of force, and intentional infliction of emotional distress.  In support of the substitution, the Government points to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80 (1988), as amended by the Federal Employees Liability Reform and Tort

Compensation Act of 1988 ("FELRTCA") § 5, Pub. L. No. 100-694, 102 Stat. 4563 (1988), which provides that a suit against the United States shall be the exclusive remedy for persons with claims for damages resulting from certain acts of federal employees taken within the scope of their employment.  28 U.S.C. § 2679(b)(1).  The Court agrees that the Notice of Substitution by the Government is appropriate.

Section 6 of the FELRTCA provides that upon certification by the Attorney General that a federal employee was acting within the scope of his employment at the time of the incident out of which a state law claim arises, any civil action arising out of the incident shall be deemed an action against the United States, and the United States shall be substituted as the sole defendant with respect to those claims. 28 U.S.C. 2679(d)(1), (2).  The Attorney General has delegated certification authority to the United States Attorneys with respect to civil actions or proceedings brought against federal employees in their respective districts.  28 C.F.R. § 15.3(a) (1991).  In this case, Timothy P. Garren, Director of the Torts Branch, Civil Division, United States Department of Justice, has certified that the individual officer defendants were acting within the scope of their employment at the time of the alleged conduct.  *See* Dkt. #30, Certification.

While a certification for the purposes of substitution is judicially reviewable, *see Counts v. Guevara*, 328 F.3d 212, 214 (5th Cir. 2003), Plaintiff has not contested the Government's Notice of Substitution in this case, and, in fact, specifically asserts in his amended complaint that "[a]ll officers . . . were acting in the scope of their employment with Defendant ICE."  Dkt. #29, ¶ 1. Therefore, the state law claims set forth in paragraphs VII, VIII, and IX of Plaintiff's First Amended Original Complaint are dismissed with respect to the individual defendants—Officers Pinero, Shifflett, Yebra, and Arendale.  Furthermore, pursuant to the provisions of 28 U.S.C. §§ 2679(b)(2),

(d)(2), the Government is substituted as the sole defendant for these claims.[3]

## III.   Defendant ICE's Motion to Dismiss

Defendant ICE moves to dismiss Plaintiff's claims against it because the Court lacks subject matter jurisdiction and because Plaintiff has failed to state a cause of action upon which relief can be granted.  In particular, ICE contends that a federal agency cannot itself be sued under the FTCA, *see F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998), which is the exclusive means for recovery of monetary damages against the United States in tort.  *See* 28 U.S.C. § 2674.  Rather, the sole and proper defendant for a FTCA claim is the United States.  *See McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir. 1998).  Additionally, ICE asserts that a *Bivens* cause of action cannot be implied against a federal agency.  *See F.D.I.C. v. Meyer*, 510 U.S. 471, 473 (1994).  Because the tort and *Bivens* causes of action brought by Plaintiff are not cognizable against ICE as a federal agency, ICE argues that all claims against it should be dismissed on the basis that they are barred by sovereign immunity.  The Court agrees.  The claims against ICE are therefore dismissed.

## IV.   Defendant United States' Motion to Dismiss

In its motion, the Government requests dismissal of Plaintiff's claims based on the doctrine of sovereign immunity.  In particular, the Government asserts that Plaintiff has not exhausted his administrative remedies in order to maintain a FTCA claim.  In response, Plaintiff argues that the

---

[3]Although not addressed by either party, the Court notes that the FTCA expressly excludes government liability in certain circumstances for claims arising out of assault or battery, as well as other specified intentional torts.  *See* 28 U.S.C. § 2680(h).  Yet, for purposes of the substitution, this Court does not consider the substance of the claims except to the extent necessary to evaluate whether the officers were within the scope of their employment, which is not contested by Plaintiff.  The Court is also mindful that Plaintiff is not without redress as to the alleged conduct of the officers because he has alleged *Bivens* claims against the individual officers based on the same conduct.   As such, the Court will permit the substitution as to all of the state law claims.

Government's hyper-technical interpretation of the administrative claim requirement is improper. According to Plaintiff, on May 14, 2004, he wrote to Timothy Keefer, Chief Counsel, Department of Homeland Security, regarding the alleged beating at the hands of the ICE officers.[4]  Plaintiff also contends that a copy of the letter was sent to the District Director of ICE, and that no response was received to either of the letters.  Additionally, Plaintiff suggests that a demonstration designed to bring awareness to Plaintiff's plight was carried by local television stations.  Finally, Plaintiff contends that he made "oral representations" to ICE that he was seeking $5,000,000.00 in compensation.  Under these circumstances, Plaintiff maintains that the Government received sufficient notice to effectuate a waiver of its sovereign immunity.

A federal court may not exercise jurisdiction over an action brought pursuant to the FTCA unless the claimant first filed an administrative claim with the appropriate federal agency pursuant to 28 U.S.C. § 2675(a).[5]  Under the authority of 28 U.S.C. § 2672, the Attorney General has promulgated regulations which govern the presentation of administrative claims.  Those regulations provide that "a claim shall be deemed to have been presented when a Federal agency receives from

---

[4]Dkt. #39, Ex. B.

[5]28 U.S.C. § 2675(a) provides:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. * * *

a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a).  The Fifth Circuit has explained that "[n]o particular form of notice is required as long as it (1) gives the agency written notice of [the] claim sufficient to enable the agency to investigate and (2) places a value on [the] claim." *Wardsworth v. U.S.*, 721 F.2d 503, 505 (5th Cir. 1983) (quoting *Adams v. United States*, 615 F.2d 284, 289 (5th Cir. 1980)).

The Fifth Circuit has indicated that the inclusion of a "a sum certain" is a jurisdictional requirement.  *See Wardsworth,* 721 F.2d at 505.  However,  the court has also liberally construed that requirement, so that the absence of a formal statement of a sum certain in the claim has not defeated jurisdiction of the claim.  *See id.* (citing *Molinar v. United States*, 515 F.2d 246 (5th Cir. 1975)).  For example, the Fifth Circuit has approved notices where the government had actually been "notified" of the amount sought by the petition in a prior state court suit, *see Williams v. United States*, 693 F.2d 555, 558 (5th Cir.1982), where the attorney's letter included an invoice and inventory of items for which recovery was sought, *see Crow v. U.S.*, 631 F.2d 28, 30 (5th Cir. 1980), or where the attorney's initial letter to the agency included medical bills and repair estimates (including some for expenses unrelated to and in excess of the claim), *see Molinar v. United States*, 515 F.2d 246, 247, 249 (5th Cir. 1975).  Yet, without some type of documented or factual basis from which the Government might at least infer the amount sought, the Fifth Circuit has reminded lower courts that they "are not at liberty to dispense with the sum certain requirement." *Wardsworth,* 721 F.2d at 506.

Plaintiff's letter sufficiently describes his allegations with respect to the incident; however,

the notice fails to provide a "sum certain" for money damages.  Unlike the cases identified above where invoices, medical bills, repair estimates, or prior litigation pleadings had sufficed, there is simply nothing that Plaintiff can point to that would satisfy the sum certain requirement.  Despite Plaintiff's contention in his affidavit that he orally informed someone at ICE that he was seeking $5,000,000.00, this Court would be distorting the jurisdictional requirement too far if it permitted such an oral representation to suffice for the required notice.  While the Fifth Circuit has liberally construed the sum certain prerequisite, adopting Plaintiff's position would essentially eviscerate the statutory requirement by allowing future plaintiffs to merely assert that they had orally represented to a governmental employee the amount of damages sought in their claim.  This Court is not inclined to adopt such a rule.  As such, dismissal of Plaintiff's claims against the Government is appropriate.

## V.     Officers' Motions for Dismissal and Summary Judgment

Finally, Plaintiff has asserted claims against the individuals officers in both their official and individual capacities.  As explained above with regard to the uncontested Notice of Substitution, the state law claims against the individual officers have been dismissed.  Thus, the only claims that remain against the officers are those for violations of Plaintiff's constitutional rights under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).  A claim under *Bivens* is the federal counterpart of § 1983 and it affords a victim of unconstitutional conduct by a federal actor or agent, who cannot be liable pursuant to § 1983 due to the absence of state action, a direct remedy under the United States Constitution.  *See Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 & n. 14 (5th Cir. 1993).  The officers seek dismissal of these claims under Rule 12(b)(6), and submit in the alternative, that judgment is proper as a matter of law under Rule 56 because no issues of fact exist as to their qualified immunity defenses.

11

A.     **Official Capacity Claims**

The official capacity claims asserted by Plaintiff must be disallowed.  *Bivens* provides a cause of action against federal government officers only in their individual capacities. *Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (citation omitted).  The *Bivens* claims asserted against the individual defendants in their official capacities in this case are in reality suits against the United States. *See Unimex, Inc. v. United States Dep't of Housing & Urban Dev.*, 594 F.2d 1060, 1061-62 (5th Cir. 1979).  The only possible vehicle for Plaintiff to bring a claim against the United States is via the FTCA for breaches of state law. However, as discussed above, Plaintiff failed to exhaust his administrative remedies under the FTCA.  Accordingly, the claims asserted against individual defendant officers in their official capacities must be dismissed with prejudice.

B.     **Individual Capacity *Bivens* Claims**

As to the remaining *Bivens* claims properly brought against the officers in their individual capacities, Plaintiff alleges violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution.[6]  Although it is not entirely clear from the amended complaint, it appears that Plaintiff is generally complaining about the use of unreasonable and excessive force,

---

[6]The Court notes at the outset that a *Bivens* claim cannot be premised on a Fourteenth Amendment violation in this case because the defendant officers are federal actors, whereas the Fourteenth Amendment only applies to state actors.  *See McGuire v. Turnbo*, 137 F.3d 321, 324 (5th.Cir 1998).  Moreover, the Eighth Amendment does not apply to this case because Plaintiff's detention is not related to any criminal conviction and sentence, but rather a deportation order for immigration violations.  *See Ingraham v. Wright*, 430 U.S. 651, 671 n.40  (1977) ("Eighth Amendment scrutiny is appropriate only after the [government] has complied with the constitutional guarantees traditionally associated with criminal prosecution"); *Johnson v. City of Dallas*, 61 F.3d 442, 444 n.5 (5th Cir. 1995) ("It is equally evident that the state does not incur Eighth Amendment liability even where injury occurs as the result of official conduct, unless the individual was being held in custody after criminal conviction").

as well as the officers' deliberate indifference to his medical needs.  Defendants contest the sufficiency of Plaintiff's complaint, and also assert the defense of qualified immunity.

Like its § 1983 counterpart, an individual defendant in a *Bivens* action is entitled to assert the defense of qualified immunity.  *See Hunter v. Bryant*, 502 U.S. 224 (1991). The immunity defense provides a strong shield against constitutional claims asserted under *Bivens*, and thus a heavy burden for Plaintiff to overcome.  The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Court must evaluate the objective reasonableness of the Defendants' actions assessed in the light of "clearly established" legal rules existing at the time. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (citing *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992)). So long as reasonable public officials could differ on the lawfulness of the officers' actions, they are entitled to qualified immunity. *Id.*  Furthermore, the Court notes that the usual summary judgment burden of proof is altered in the case of a qualified immunity defense.  *See Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). An officer need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law. *Id.* The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct. *Id.*

The Court finds that Plaintiff cannot overcome the qualified immunity defenses at the summary judgment phase for Officer Arendale.  In both his amended complaint and his briefing to the Court, Plaintiff fails to link any portion of the alleged conduct of Officer Arendale with any of the specific constitutional violations upon which he bases his *Bivens* claim.  Rather, Plaintiff asserts

13

general violations of several constitutional rights, some of which are clearly inapplicable, without describing the specific conduct of the officers that implicates those provisions.  Without more specificity, it is difficult for this Court to conclude that Plaintiff has alleged a violation of a clearly established constitutional right.  *See Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994).

That Plaintiff has not alleged a constitutional violation on the part of Arendale is particularly evident when the allegations are considered.  According to Plaintiff,  Officer Arendale has been identified as one of the officers that surrounded him, but Plaintiff has not alleged that he participated in any physical conduct.  Rather, Plaintiff has only identified Arendale as instructing others to send Plaintiff to the onsite clinic instead of the emergency room for treatment.  *See* Dkt. #29, ¶ 19. Plaintiff initially describes Arendale's actions in terms of a negligence claim, stating that Arendale "owed Plaintiff a duty of care, Officer Arendale breached that duty, the breach was the proximate cause of Plaintiff's severe injuries."  Dkt. #41, p. 5, ¶ 6.  However, negligence alone does not rise to the level of a constitutional tort, and Plaintiff has not established that Arendale was otherwise personally involved or responsible for implementing any policies leading to Plaintiff's injuries. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).  Yet Plaintiff claims that Arendale, as Director, would be liable even without his presence under the doctrine of *respondeat superior*. However, the doctrine of *respondeat superior* is not applicable in *Bivens* actions.  *Montoya-Ortiz v. Brown*, 154 Fed. Appx. 437, 439 (5th Cir. 2005) ("[Plaintiff's] claim that [Defendant officers] failed to properly supervise their staff lacks merit because respondeat superior liability is not available in a *Bivens* action.") (citing *Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 110 (5th Cir. 1993)); *see also Robinson v. Schilling*, 273 F.3d 1094 (5th Cir. 2001) (claim of *respondeat superior* fails as a matter of law in *Bivens* action); *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998)

14

(same).  Accordingly, under the facts alleged with respect to Officer Arendale, the Court concludes that Plaintiff has failed to meet his burden.

As to the other officers, however, the Court concludes that Plaintiff has satisfied the requirement of alleging a clearly established constitutional right.  That is, the Court finds that, while his amended complaint, as well as his briefing, lacks specificity in many respects, Plaintiff has sufficiently articulated an excessive force claim under the Fourth Amendment, and his corresponding right to be free from the use of excessive force at the hands the officers.  To succeed on an excessive force claim under the Fourth Amendment, the plaintiff bears the burden of showing: "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Williams v. Bramer*, 180 F.3d 699, 703, *clarified*,186 F.3d 633, 634 (5th Cir.1999).    Although a showing of "significant injury" is no longer required in the context of an excessive force claim, this court does "require a plaintiff asserting an excessive force claim to have 'suffered at least some form of injury.'" *Id*. (quoting *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)).

The Court concludes that fact issues exist as to whether the remaining officers' actions were objectively reasonable in the context of an excessive force claim.  The gravamen of Plaintiff's complaint is that he was forced to provide a fingerprint of his index finger after declining to do so because he could not speak with an attorney.  He alleges that the force used by the officers was excessive and unreasonable, resulting in injuries to him.  In particular, he alleges that Officers Yebra slammed his head into a wall causing a cut above his eye.  Afterwards, Plaintiff asserts that Yebra slammed Plaintiff's face into the concrete floor, where, while handcuffed and wearing leg chains, Officers Pinero and Shifflett drove their knees into Plaintiff's back and side.  Additionally, Plaintiff

alleges that he was choked by one of the officers while the kicking and beating continued. In addition to Plaintiff's account of the incident, which this Court must assume is true at this stage, the Court also notes that documented evidence supports that Plaintiff did, in fact, suffer injuries that are more than *de minimis* as a result of the incident. *See* Dkt. #33, Ex. 4.

Although it is this Court's duty to resolve the issue of qualified immunity, the Fifth Circuit has been clear that the jury's role has not been abolished in those situations where "underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (quoting *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 430 (5th Cir. 1993)). For example, in *Johnston v. City of Houston*, the Fifth Circuit  held that "the differing accounts of the various" parties precluded summary judgment on the basis of qualified immunity. 14 F.3d 1056, 1061 (5th Cir. 1994). The parties in *Johnston*  had "divergent versions of what happened" with regards to the force used by the police, the attempt by the arrestee to strike the arresting officer, and the effort by the officer to diffuse the situation. *Id.* at 1058. As in *Johnston*, Plaintiff's claims in this case, which are supported with evidence of actual injury, if proved, could establish that the officers' actions were not objectively reasonable under the circumstances. For this Court to decide otherwise at this point would involve the Court resolving factual disputes and making credibility determinations of the individuals involved—both tasks intended to be taken up by a jury as the finder of facts. As such, summary judgment at this time on behalf of Officers Pinero, Yebra, and Shifflett would be inappropriate.

**Conclusion**

For the foregoing reasons, the Court concludes that Defendant United States' Notice of Substitution is GRANTED, Defendant United States Immigration and Customs Enforcement's ("ICE") Motion to Dismiss is GRANTED, Defendant United States' Motion to Dismiss Plaintiff's FTCA Claim, and, Alternatively, Motion for Summary Judgment is GRANTED, Defendant Officers Yebra and Pinero's Motion to Dismiss, and/or Alternatively, Motion for Summary Judgment is DENIED, Defendant Officer Shifflett's Motion to Dismiss, or Alternatively, Motion for Summary Judgment is DENIED, Defendant Officer Arendale's Motion to Dismiss, or Alternatively, Motion for Summary Judgment is GRANTED.

It is so ORDERED.

Signed this 23rd day of March, 2006.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

17