UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL ARIWODO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-04-04572 |
| | § | |
| UNITED STATES CUSTOMS & IMMIGRATION ENFORCEMENT, *et al.*, | § § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM & ORDER**

Pending before the court is plaintiff's motion to disqualify defendant's expert Officer David Gerling-Perez. Dkt. 70. Plaintiff Michael Ariwodo ("plaintiff") claims that Mr. Perez's expert testimony is unreliable and thus inadmissible. *Id.* After considering the motions, arguments of counsel, the testimony of Officer Perez, and the applicable law, the court concludes that plaintiff's motion should be DENIED.

**I. BACKGROUND**

The court will briefly summarize the facts that underlie this *Bivens* action. Plaintiff, a citizen of Nigeria, alleges that officers of Immigration and Customs Enforcement ("ICE") violated his constitutional rights through an excessive use of force against his person while he was in ICE custody. As part of their defense to this claim, the officers (collectively, the "defendants") respond that the events in question did not occur. Rather, they argue that plaintiff, who is under a deportation order, brought this action to remain in the U.S. because the Nigerian Embassy will not approve travel documents for its citizens while they have litigation pending in the United States. Defendants offer plaintiff's immigration file, or A-File, to support this alleged motive. Defendants claim that the A-

File contains evidence of sham marriages by plaintiff in a desperate attempt to remain in this country.

Defendants also offer the testimony of Officer David Gerling-Perez, a purported fraud expert, who has analyzed plaintiff's A-File and will testify that based on his review of the documentation plaintiff did engage in a sham marriage to remain in the United States. Officer Perez arrived at this opinion based on his extensive experience in the field of fraud detection. From April 1995 to January 2000, Officer Perez worked for the Immigration and Naturalization Service ("INS") as an Immigration Inspector with the responsibility of "detect[ing] fraud and misrepresentation in travel documents presented in order to gain entry into the United States." Dkt. 64, Ex. 2 at 5. From January 2000 to July 2004, Officer Perez worked for Citizenship and Immigration Services ("CIS") as a District Adjudications Officer ("DAO") with myriad responsibilities including the detection of marriage fraud. *Id*. at 4. Officer Perez testified that during his four years as a DAO, he interviewed more than 1,000 applicants for immigration benefits to ascertain whether the applicants had engaged in certain kinds of fraud, including marriage fraud, against the government. In July 2004, Officer Perez became an Immigration Officer in the Office of Fraud Detection and National Security ("FDNS") within the CIS. At the FDNS, Officer Perez gained further experience in the field of fraud detection, visiting residences and businesses "to determine if marriage, employment, and/or other types of benefit fraud exists." *Id.* at 3. All told, Officer Perez has been employed by the United States Government in a fraud detection capacity for almost twelve years, of which he spent six years specifically engaged in detecting marriage fraud.

Based on this experience, Officer Perez determined that several items in plaintiff's A-File supported a finding of marriage fraud, including the following: (1) evidence that during his marriage to an American citizen, plaintiff had two children with his first wife; (2) statements from neighbors

2

that they had never seen the plaintiff at his claimed residence with his American wife; (3) a filing for welfare benefits by his American wife as a single female; and (4) an apartment lease entered into by plaintiff and his first wife while married to his American wife.  Officer Perez considered this and other evidence and made a determination that plaintiff had committed marriage fraud against the United States government.

In an attempt to exclude this damaging testimony from trial, plaintiff now seeks to disqualify Officer Perez as a fraud expert.  Plaintiff's core argument is that Perez should be struck as an expert because he lacks the experience necessary to be qualified as a fraud detection expert and lacks the methodology required to ensure his expert opinions are reliable.  However, before examining plaintiff's arguments in detail, the court will review the background law pertaining to expert testimony.

## II.  GOVERNING LAW

Any analysis of the admissibility of expert testimony must begin with Rule 702 of the Federal Rules of Evidence.  That Rule provides in full:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

This rule establishes the framework for determining the admissibility of expert testimony, as explained by the Supreme Court in the seminal case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).  Read together, *Daubert* and Rule 702 require the district courts "to act as gate-keepers, making a preliminary assessment of whether the reasoning or

methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 243-44 (5th Cir. 2002) (internal quotation marks omitted). In other words, "expert testimony is admissible only if it is both relevant and reliable." *Biomatrix*, 288 F.3d at 244 (citing *Daubert*, 509 U.S. at 589). And although *Daubert* only addressed scientific testimony, the Supreme Court later expanded the court's gatekeeping function to apply to all types of expert testimony. *See Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999).

With regard to the issue of reliability, the *Daubert* Court offered four general factors that trial courts can use in evaluating expert testimony. "These factors include whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Id.* at 244 (citing *Daubert*, 509 U.S. at 593). In *Kumho Tire*, the Supreme Court stressed that these factors, which were originally tailored for examining scientific opinions, were illustrative only, and they may not always translate to nonscientific disciplines. "[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150. Thus, in a reliability determination for a nonscientific expert, the district court must satisfy itself that the expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

With this background of the admissibility of expert testimony in mind, the court will now consider whether the expert testimony of Officer Perez is sufficiently reliable to pass the *Daubert/Kumho Tire* test for admissibility.

### III. ANALYSIS

Plaintiff challenges the reliability of Officer Perez's testimony on two grounds: (1) that he is not qualified to offer expert opinions on fraud detection; and (2) that he lacks a sound methodology to conclude that plaintiff's A-File contains evidence of marriage fraud. *See* Dkt. 70 at 1-2. These issues will be addressed in turn.

#### A. OFFICER PEREZ'S QUALIFICATIONS

Plaintiff first contends that Officer Perez lacks the qualifications to render an expert opinion on marriage fraud. Plaintiff points to the fact that Officer Perez holds a degree in Business Administration, and his experience detecting fraud in travel documents is unrelated to detecting any instances of marriage fraud in plaintiff's A-File. *Id.* at 2. Thus, according to plaintiff, Officer Perez lacks the education or experience necessary to be qualified as an expert on marriage fraud under Rule 702.

In rebuttal, Defendants counter that Officer Perez is well qualified to offer expert opinions on this subject due to his extensive experience investigating marriage fraud. Dkt. 76 at 3. According to defendants, Officer Perez "has been involved with hundreds, if not thousands of cases" of marriage fraud as an ICE employee over the past six years. *Id.* He has also "examined numerous compilations of INS documents, including numerous A-Files, involving the issue of detecting marriage fraud." *Id.* In sum, the thrust of the defendants' argument is that Officer Perez's vast

5

experience in the area of fraud detection in general, and marriage fraud in particular, renders him qualified to offer an expert opinion on the contents of plaintiff's A-File.

The court agrees with the defendants. Rule 702 expressly contemplates that a witness can be qualified as an expert on the basis of experience in a particular field. *See* FED. R. EVID. 702 (providing that a witness can be "qualified as an expert by knowledge, skill, *experience*, training, or education" (emphasis added)). Perez has a great deal of experience in detecting marriage fraud first as a DAO and then as an Immigration Inspector for CIS, and the court is satisfied that he is sufficiently qualified to offer an expert opinion on marriage fraud in this case.

### B. OFFICER PEREZ'S METHODOLOGY

Plaintiff's second contention is that Officer Perez should be disqualified as an expert because he cannot demonstrate that his testimony is based on a sound methodology. Dkt. 70 at 2. After Congress amended Rule 702 in 2000, the new Rule states that a qualified expert may testify as to his or her conclusions if "the testimony is the product of reliable principles and methods." FED. R. EVID. 702. In cases like this one, in which fraud detection is not subject to experimental conditions and testable methodologies, "other indicia of reliability are considered under *Daubert,* including professional experience, education, training, and observations." *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006). At any rate, the expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

In this case, Officer Perez, who worked for six years in the field of marriage fraud detection, made a determination of marriage fraud based on his knowledge and experience and review of

hundreds of documents within plaintiff's A-File. At the recent evidentiary hearing on this issue, he explained that after analyzing all of the evidence in the aggregate, he concluded that the plaintiff's marriage to his second wife was fraudulent. This conclusion, rather than the process preceding it, became the focus of the hearing. Plaintiff's counsel questioned Officer Perez's findings and offered alternative explanations of the evidence. For example, counsel asserted that although plaintiff fathered two children with his first wife during his marriage to his American wife, this fact alone does not inexorably lead to a determination of marriage fraud.

Counsel's arguments miss the mark. As a gatekeeper of testimony, the court cannot weigh the expert's findings; the court must only consider whether the expert's "principles and methods" are reliable. FED. R. EVID. 702. Indeed, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). In other words, the *Daubert* analysis exists to judge methods, not conclusions. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

The court is satisfied that Officer Perez's methods, developed through years of experience, display the same intellectual rigor as that of other experts in the field of marriage fraud detection. Accordingly, Officer Perez's testimony is reliable, and the court will not find his testimony inadmissible on this ground.

## IV. CONCLUSION

To be admissible, expert testimony must be relevant and reliable. As part of the reliability analysis, the proponent of the expert testimony must demonstrate that (1) the expert is qualified to

offer the opinion, and (2) the expert's opinion is based on sound principles and methods.  In this case, the defendants have demonstrated that Officer Perez has significant experience in the field of marriage fraud, and his opinions are based on a sound methodology utilized in that field.  Thus, Officer Perez's testimony is reliable.  For these reasons, plaintiff's motion to disqualify Officer Perez is DENIED.

It is so ORDERED.

Signed at Houston, Texas on February 20, 2007.

_____
Gray H. Miller
United States District Judge